UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELENA CASAS,

       Plaintiff,

v.                                        CASE NO. 8:13-CV-599-T-17TBM

SCHOOL DISTRICT OF
HILLSBOROUGH COUNTY,

       Defendant.
_____/

ORDER

This cause is before the Court on:

| Dkt. 15 | Defendant's Motion for Summary Judgment |
| Dkt. 19 | Plaintiff's Response in Opposition |
| Dkt. 23 | Defendant's Reply |
| Dkt. 25 | Plaintiff's Reply |

On January 15, 2013, Plaintiff Elena Casas filed a five-count complaint against her former employer, Defendant School District of Hillsborough County, alleging that Defendant violated the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq., and discriminated against her based on her disability, in violation of the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01, et seq. (Dkt. 2). In particular, Plaintiff alleges that Defendant unlawfully denied her request for an extension of medical leave, that Defendant required her resignation when she did not return from medical leave, that Defendant refused to transfer her to a light-duty position, and that Defendant retaliated against her for exercising her statutorily-protected rights. Plaintiff seeks compensatory and punitive damages, costs and attorney's fees, and injunctive relief (Dkt. 2).

Case No. 8:13-CV-599-T-17TBM

## I.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case.  An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks omitted).

The moving party bears the initial responsibility to demonstrate the absence of a genuine dispute of material fact, and the Court must view all evidence and reasonable inferences in the light most favorable to the nonmoving party.  Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1316 (11th Cir. 2012).  "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial."  Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).  The non-moving party may not rely on evidence that is "merely colorable, or is not significantly probative of a disputed fact."  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011) (internal quotation marks omitted).

## II.    Factual Background

1.    Defendant hired Plaintiff in June 2008.  On September 28, 2009, shortly before the relevant events occurred, Plaintiff began working as a science teacher at Jennings Middle School.  (Dkt. 17, pars. 1, 6).

2

Case No. 8:13-CV-599-T-17TBM

2.    On October 1, 2009, Plaintiff fainted in a restroom at the school.  On October 20, 2009, Plaintiff applied for FMLA leave.  Plaintiff submitted a Medical Verification Form, completed by Dr. Stuart Helms, who requested that Plaintiff remain out of work for three weeks.  Dr. Helms diagnosed chest pain, palpitations, headaches, diarrhea, panic, anxiety, and hypertension.  (Dkt. 17, pars. 8-12; Dkt. 16, Ex. 9).

3.    Plaintiff's request was granted retroactive to October 2, 2009.  (Dkt. 16, Ex. 10).  Plaintiff used 144 hours of FMLA leave through November 9, 2009.  (Dkt. 16, Ex. 5).

4.    During this time, Plaintiff was granted a transfer to Alonso High School, which allowed her to work closer to home.  She began working at Alonso High School on November 18, 2009.  (Dkt. 17, pars. 14-15).

5.    Plaintiff was absent from work again, beginning on February 8, 2010.  On February 19, 2010, Plaintiff requested FMLA leave.  Plaintiff submitted a Medical Verification Form, completed by Dr. Jorge Gadea.  Dr. Gadea diagnosed major depression, syncope, high blood pressure, and other conditions.  (Dkt. 17, pars. 16-17; Dkt. 16, Exs. 3, 5).

6.    On March 18, 2010, the Principal of Alonzo High School, Louis Diaz, wrote Plaintiff a letter, explaining that her FMLA leave would expire at the conclusion of the April 6, 2010 school day, as she would have exhausted her 480 hours of FMLA leave. (Dkt. 15-2, par. 10).  However, Plaintiff thought she had available leave until the end of May.  (Dkt. 16, pp. 53-54, 56, 73).

7.    During this time, Plaintiff requested to work in a light-duty or "sitting down" position, but this request was denied.  (e.g., Dkt. 16, pp. 32-37, 47-48).  In her

Case No. 8:13-CV-599-T-17TBM

Complaint, Plaintiff alleged that she was told there were no such jobs available.  (Dkt. 2, par. 12).

8.    On April 6, 2010, the Human Resources Department gave Plaintiff "a brief extension to her FMLA leave through the end of spring break."  Plaintiff's "final return date" was designated as Monday, April 19, 2010.  (Dkt. 16, Ex. 7).

9.    On Saturday, April 17, 2010, Plaintiff emailed Principal Diaz to inform him that her medical problem continuing, and that she also had to travel to Puerto Rico to attend her grandfather's funeral.  Plaintiff wrote, in relevant part:

> I don't know exactly when is my return when I get there I will make those arrangements.  While I am there I will try to see a doctor of the family for an evaluation and a second opinion for my medical condition too.  Please, don't take me out of the school system and help me keep my job.

Plaintiff also stated that she would keep the school "posted with my return from Puerto Rico I will call you from there."  (Dkt. 16, Exh. 1).

10.    When Plaintiff did not return to work on Monday, April 19, 2010, Principal Diaz prepared an email to Plaintiff requesting that she submit a letter of resignation. Principal Diaz received the letter of resignation from Plaintiff on April 23, 2010.  In Plaintiff's resignation paperwork, Principal Diaz indicated that he would not recommend Plaintiff for reemployment.  (Dkt. 15-2, pars. 12-13).

## III.    Discussion

Plaintiff's complaint includes claims under the FMLA for unlawful interference and retaliation, and pursuant to the FCRA for disparate treatment, failure-to-accommodate, and retaliation.  (Dkt. 2).  Defendant has moved for summary judgment on all claims.

4

Case No. 8:13-CV-599-T-17TBM

(Dkt. 15).  As detailed below, Defendant's motion is denied as to the FMLA-interference claim, but granted as to the remaining claims.

## A.   FMLA

The FMLA provides that an eligible employee is "entitled to a total of 12 workweeks of leave during any 12-month period" for a number of events, including a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  To protect this entitlement, the FMLA authorizes two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (internal quotation marks omitted); see also 29 U.S.C. § 2615.

## 1.   Interference claim

"To establish an interference claim, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010) (internal quotation marks omitted).  Additionally, for both interference and retaliation claims, the employee must demonstrate that he was qualified for FMLA leave.  Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1167 (11th Cir. 2014).

In the instant motion for summary judgment, Defendant maintains that Plaintiff was not qualified for FMLA leave when she resigned as of April 19, 2010 because she had exhausted all of her leave.  In particular, Defendant maintains that the applicable 12-month period is Defendant's fiscal year, which runs from July 1 through June 30. Because it is undisputed that Plaintiff used 480 hours, or 12 weeks, during the period

Case No. 8:13-CV-599-T-17TBM

running from October 2, 2009 through April 6, 2010---within Defendant's 2009-2010 fiscal year---Defendant argues that Plaintiff exhausted her FMLA leave.  In response, Plaintiff argues that the 12-week period restarted in the calendar year 2010, and that she had therefore not used all of her leave as of April 19, 2010.  Accordingly, Plaintiff's interference claim turns on one issue: the correct method for computing the 12-month period.

The relevant FMLA regulations provide that an employer may choose among four methods for calculating the 12-month period: (1) the calendar year; (2) any fixed 12-month leave year, such as a fiscal year; (3) the 12-month period measured forward from the date the employee first takes FMLA leave; or (4) a "rolling" 12-month period that is further defined in the regulations.  29 C.F.R. § 825.200(b)(1)-(4).  An employer is allowed to choose "any one" of the alternatives in paragraph (b), provided that the chosen alternative is  "applied consistently and uniformly to all employees."  29 C.F.R. § 825.200(d)(1).  If an employer fails to select one of the options in paragraph (b), "the option that provides the most beneficial outcome for the employee will be used."  29 C.F.R. § 825.200(e).

Plaintiff has submitted a copy of Defendant's "FMLA Leave" policy (Dkt. 20-5).  The policy provides that the 12-month period "is defined as a fixed 12 month period (i.e. the "leave year" is identical for all staff members – e.g., a fiscal year or calendar year)."  (Dkt. 20-5, p. 3).  Plaintiff correctly argues that Defendant's policy is facially ambiguous, as it references two of the calculation methods authorized under 29 CFR § 825.200(b): the calendar-year method under subparagraph (b)(1), and the fiscal-year method under subparagraph (b)(2).

To address this ambiguity, Defendant has submitted a declaration from Dena Collins, Defendant's Manager of Personnel Services, stating that the 12-month period

Case No. 8:13-CV-599-T-17TBM

referenced under the FMLA Leave policy is, in fact, Defendant's fiscal year, which runs from July 1 through June 30, and that Defendant does not use the calendar-year method (Dkt. 23-1, pars. 4, 7).  In response, Plaintiff maintains that there is evidence that, in practice, Defendant was using a calendar-year method.  Specifically, Plaintiff argues that her second "Request for Leave of Absence" form, completed in February 19, 2010, was granted for "3 months" from February 8, 2010.  (See Dkt. 25-1).  Plaintiff argues that allowing her 12 weeks of leave in 2010 tends to show that Defendant was using a calendar-year method, contrary to Ms. Collins' declaration.

Plaintiff's reliance on this form is misplaced.  The form indicates only that the dates for Plaintiff's requested leave were February 8, 2010 through "3 months from 2-8-10."  Further, a notation on the form states that on "Apr. 6, 2010 FMLA will run out."  Thus, contrary to Plaintiff's contention, the form supports Defendant's argument that it was using a fiscal-year method to calculate Plaintiff's leave.  (Dkt. 25-1).

Regardless of Defendant's actual practice, however, the fact remains that Defendant's FMLA Leave policy does not clearly select a method of calculating the 12-month leave year.  The relevant regulations do not specify how an employer may select one of the four calculation methods allowed under paragraph (b), but as discussed in the thorough and well-reasoned opinion by the Ninth Circuit in Bachelder v. American West Airlines, Inc., "[t]he only sensible reading . . . is that an employer's 'selection' of a calculating method must be an open rather than a secret act, necessarily carrying with it an obligation to inform its employees thereof."  259 F.3d 1112, 1128 (9th Cir. 2001); accord Thom v. Am. Standard, Inc., 666 F.3d 968, 974 (6th Cir. 2012).  In Bachelder, the employer maintained that it had selected a "rolling year" method, but the language in the employee handbook merely parroted the statutory language in § 2612(a)(1)--- providing that "employees are entitled to up to twelve calendar weeks of unpaid [FMLA] leave within any twelve month period."  The Ninth Circuit concluded that this language

Case No. 8:13-CV-599-T-17TBM

was insufficient to inform employees of the selection of the rolling year method, and that the employer "fail[ed] to select" a calculating method, triggering the protections of § 825.200(e).  The employee was therefore entitled to use the more advantageous calendar year method.  Id. at 1129.

        In this case, the available record suggests that Defendant has likewise "fail[ed] to select" a computation method, as the policy submitted by Defendant references both a fixed year method and a calendar year method.  Under such circumstances, Plaintiff would be entitled to the benefit of the more advantageous calendar year method, which would have allowed Plaintiff additional leave after April 19, 2010.

        As a final point, the Court notes that Defendant has suggested that Plaintiff herself believed a fiscal year method was being used to calculate her available FMLA leave.  As the Ninth Circuit observed in Bachelder, the subjective beliefs of the employee and employer are immaterial to the employer's liability on an FMLA-interference claim—although the employer's good faith belief may be relevant to the issue of damages.[1]  Id. at 1130; see also Krutzig, 602 F.3d at 1235 (observing that "[t]he employee need not allege that his employer intended to deny the benefit, because the employer's motives are irrelevant") (internal quotation marks omitted).

        Accordingly, the Court finds that Defendant has failed to demonstrate that Plaintiff was not qualified for FMLA leave.  Hurley, 746 F.3d at 1167.  Defendant's motion for summary judgment on Plaintiff's FMLA-interference claim is therefore **denied**.

---

[1] The employer's subjective beliefs are also relevant to Plaintiff's FMLA-retaliation claim, as discussed below.

Case No. 8:13-CV-599-T-17TBM

**2.   Retaliation claim**

In contrast to an FMLA-interference claim, an employee bringing an FMLA-retaliation claim must demonstrate that the employer's actions were motivated by a retaliatory animus. Martin v. Brevard Cnty. Publ. Sch., 543 F.3d 1261, 1267-68 (11th Cir. 2008).  Absent direct evidence of retaliatory intent, courts apply the traditional McDonnell Douglas burden-shifting framework to FMLA retaliation claims.  To establish a prima facie case, the employee must show that: (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity.  Once the employee establishes the prima facie case, the burden shifts to the employer to articulate a non-discriminatory reason for the adverse action.  If the employer does so, the burden shifts back to the employee to show that the employer's proffered reason was pretextual.  Id. at 1268.

With respect to Plaintiff's retaliation claim, Defendant raises three interrelated arguments.  First, Defendant maintains that Plaintiff did not engage in statutorily-protected activity, under the first prong of the prima facie case, because she was not entitled to FMLA leave.  Second, Defendant argues that Plaintiff cannot establish the requisite causal connection, under the third prong of the prima facie case, because her separation was due to her failure to report to work on April 19, 2010---not because of her exercise of FMLA rights.  Similarly, Defendant maintains that this non-discriminatory reason is not pretextual because Plaintiff had, in fact, exhausted all of her FMLA leave.

The Court will assume, arguendo, that Plaintiff has established a prima facie case.  By citing job abandonment, Defendant has also produced a sufficient non-discriminatory reason for seeking Plaintiff's resignation.  It is therefore Plaintiff's burden to show by a preponderance of the evidence that a retaliatory animus motivated Defendant's decision to request her resignation.

9

Case No. 8:13-CV-599-T-17TBM

Plaintiff argues that Defendant's reason is pretextual because the record shows that her 12 weeks of FMLA leave had not actually expired when she was forced to resign. (Dkt. 19, p. 16). As explained above, Defendant's leave calculation was potentially inaccurate. For the purposes of the pretext inquiry, however, it is well-established that an employer may terminate an employee for a "bad reason" or based on a "mistaken belief," without violating federal law. Wascura v. City of S, Miami, 257 F.3d 1238, 1247 (11th Cir. 2001); Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001). The Eleventh Circuit has observed:

> A plaintiff trying to show pretext based on a defendant's dishonest belief of the grounds the defendant gave for his decision does not succeed by presenting evidence that the defendant was mistaken about the facts upon which he based his alleged non-discriminatory decision. Instead, a plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based his non-discriminatory decision.

Woodard v. Fanboy, L.L.C., 298 F.3d 1261, 1265 (11th Cir. 2002).

In an attempt to show pretext, Plaintiff cites only to the "Request for Leave of Absence" form, which she argues shows that Defendant was using a calendar-year method. (Dkt. 19, p. 16). As discussed above, that form does not support such an inference, even taking the available inferences in the light most favorable to the Plaintiff. Moreover, Ms. Collins' declaration states that Defendant used a fixed-year method for calculating leave, and there is evidence from Principal Diaz that he believed that Plaintiff's FMLA leave had expired on or before April 19, 2010. (Dkt. 23-1; Dkt. 15-2). Plaintiff points to no additional evidence calling Ms. Collins' and Principal Diaz's representations into question, such as evidence that a method other than the fiscal year was used to calculate leave requests for other employees, evidence that Defendant gave Plaintiff conflicting information as to which method it was using, or other circumstantial evidence that would suggest the existence of a retaliatory animus.

Case No. 8:13-CV-599-T-17TBM

Plaintiff thus fails to produce evidence upon which "a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based his non-discriminatory decision." Woodard, 298 F.3d at 1265-66.  Defendant's motion for summary judgment on Plaintiff's FMLA-retaliation claim is therefore **granted**.

**B.   FCRA**

In addition to her FMLA claims, Plaintiff has alleged three claims pursuant to the Florida Civil Rights Act (FCRA), for disability discrimination[2] and retaliation (Dkt. 2).  As explained below, Defendant's motion for summary judgment is due to be granted on these claims.

**1.   Timeliness**

Defendant first contends that Plaintiff's FCRA claims are untimely (Dkt. 15 at 9-10).  Defendant fails to cite controlling authority in support of this argument, and Plaintiff's FCRA claims appear to be well within the applicable four-year statute of limitations.  Abram-Adams v. Citigroup, Inc., 491 Fed. Appx. 972, 975 (11th Cir. 2012) (citing Seale v. EMSA Corr. Care, Inc., 767 So. 2d 1188, 1189 (Fla. 2000)); see also Joshua v. City of Gainesville, 768 So. 2d 432, 439 (Fla. 2000); Ross v. Jim Adams Ford, Inc., 871 So. 2d 312, 315 (Fla. 2d DCA 2004).

**2.   Disability discrimination**

The FCRA prohibits discrimination on the basis of disability, among other protected characteristics.  Fla. Stat. § 760.10(1)(a).  The FCRA is construed in conformity with the federal Americans with Disabilities Act ("ADA") and federal case law

---

[2] Defendant has construed Plaintiff's two disability discrimination claims (Dkt. 2, pars. 48-63) as claims for disparate treatment and failure-to-accommodate, to which Plaintiff has not objected.  This order therefore construes the claims in the same manner.

Case No. 8:13-CV-599-T-17TBM

interpreting the ADA is therefore applicable to FCRA claims.[3]  Holly v. Clairson Indus.,
L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007).

In cases involving circumstantial evidence of discrimination, disparate treatment
claims are evaluated under the McDonnell Douglas burden-shifting framework.  Id.  To
establish a prima facie case, a plaintiff must demonstrate that: (1) she has a disability;
(2) she is a "qualified individual;" and (3) the defendant unlawfully discriminated against
her because of the disability.  Id. at 1255-56.  In failure-to-accommodate claims, the
third prong of the prima facie case requires the plaintiff to show that she was
discriminated against by virtue of the defendant's failure to provide a reasonable
accommodation.  Id. at 1262 & 1263 n.17; see also McKane v. UBS Fin. Servs., Inc.,
363 Fed. Appx. 679, 681 (11th Cir. 2010).  A plaintiff alleging failure-to-accommodate
does not have the burden to show disparate treatment, and the burden-shifting scheme
does not apply to such claims.  Holly, 492 F.3d at 1262.

In the instant motion for summary judgment, Defendant does not contest
Plaintiff's status as a disabled individual under the first prong of the prima facie case.
Rather, Defendant argues that Plaintiff was not a "qualified individual" under the second
prong.  As discussed below, the Court agrees.

A qualified individual is "an individual who, with or without reasonable
accommodation, can perform the essential functions of the employment position that
such individual holds or desires."  42 U.S.C. § 12111(8).  Reasonable accommodations
may include job restructuring, part-time or modified work schedules, or reassignment to

---

[3] The ADA Amendments Act of 2008 ("ADAAA") became effective on January 1, 2009.
The relevant events in this case took place after the ADAAA went into effect, and the
Court therefore applies the post-ADAAA version of the ADA.  Mazzeo v. Color
Resolutions Int'l, LLC, 746 F.3d 1264, 1267 (11th Cir. 2014).  All references to the
"ADA" are references to the ADA as amended by the ADAAA.

Case No. 8:13-CV-599-T-17TBM

a vacant position.  42 U.S.C. § 12111(9)(B).  "The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable."  Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000).  Further, an employee must identify a reasonable accommodation before triggering the employer's duty to investigate the accommodation in the "interactive process."  Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 n.2 (11th Cir. 2001).

At the outset, the Court notes that Plaintiff does not maintain that she was able to perform the essential functions of her teacher position without reasonable accommodation.  Plaintiff does, however, argue that she would have been able to perform the essential functions of her job with either of two accommodations: (1) performing a job that was "light duty" and/or in a "sitting position;" or (2) being allowed additional absences from work.  Defendant maintains that neither accommodation is reasonable.[4]

Turning to Plaintiff's first proposed accommodation---transfer to a light-duty or seated position---it is well-established that an employer is under no obligation to transfer an employee to a position in which there are no vacancies, or to create a new position for an employee.  See Terrell v. USAir, 132 F.3d 621, 626 (11th Cir.1998); Dickerson v. Sec'y, Dep't of Veterans Affairs Agency, 489 Fed. Appx. 358, 361 (11th Cir. 2012).  As

---

[4] Defendant also maintains that Plaintiff did not make the requisite specific request for an accommodation. See, e.g., Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999).  In her deposition, Plaintiff testified that she specifically asked if she could be transferred to a "sitting down" or "light duty position," and that she specifically asked for her leave to be extended, and that both requests were refused. (Dkt. 16, pp. 32-37, 47-48, 61-62, 77-78, 95, 106, 118-19).  For the purposes of the instant motion, this testimony is sufficient to establish that Plaintiff made specific requests for accommodation.

Case No. 8:13-CV-599-T-17TBM

Defendant argues in the motion for summary judgment, Plaintiff originally alleged in her Complaint that "Principal Diaz and Human Resources indicated that there were no light duty assignments available and they did not have anything for Plaintiff to do other than her normal duties." (Dkt. 2, par. 12). At this juncture, Plaintiff points to no evidence indicating that vacant positions existed. Plaintiff therefore fails to provide "the evidence needed to establish that a specific reasonable accommodation, in the form of a vacant position, actually existed." Lucas, 257 F.3d at 1258 n.5.

Alternatively, Plaintiff maintains that she could have been accommodated in her existing position as a teacher because there is no evidence that standing was an essential function of this position. As to this issue, Defendant cites to Plaintiff's own deposition testimony, in which she stated that: "teaching was eight hours a day standing up. You're writing on the board. You're teaching all day standing up. You only sit down a couple of minutes on the computer . . . . It's standing up all day." (Dkt. 16, p. 66). In response, Plaintiff again fails to cite any specific facts calling this evidence into dispute, sufficient to raise a genuine issue for trial. See Dietz, 598 F.3d at 815.

Plaintiff also fails to establish that her other requested accommodation---additional leave from her job---was a reasonable accommodation. In Wood v. Green, the Eleventh Circuit held that the plaintiff was not a "qualified individual" because his requested accommodation of indefinite leave was not reasonable, as a matter of law. The Eleventh Circuit concluded that "[t]he ADA covers people who can perform the essential function of their jobs presently or in the immediate future," not "at some uncertain point in the future." 323 F.3d 1309, 1314 (11th Cir. 2003); accord Roddy v. City of Villa Rica, 536 Fed. Appx. 995, 1001 (11th Cir. 2013).

Plaintiff maintains that she did not request "indefinite" leave. Rather, she argues that the medical verification form completed by Dr. Gadea on February 19, 2010 listed a

14

Case No. 8:13-CV-599-T-17TBM

probable duration of "2-3 months."  (Dkt. 20-2, p.7).  However, even assuming that a "probable" absence of two to three months is a sufficiently definite leave request, Plaintiff does not address her subsequent request for an extension of leave in the April 17, 2010 email.  In that email, Plaintiff stated that she would not be returning to work on April 19, 2010 as scheduled, that she was going to get a second medical opinion, and that she would keep Principal Diaz posted on her return from Puerto Rico.  Although this email indicated that Plaintiff wanted to keep her job, it did not contain any indication as to when Plaintiff planned to return to work.  (See Dkt. 16, Ex. 1).  Under these circumstances, and consistent with Wood v. Green, the Court finds that Plaintiff's request for indefinite leave did not constitute a reasonable accommodation.

Because Plaintiff has failed to establish that she could perform the essential functions of her job, with or without reasonable accommodation, she fails to demonstrate that she is a "qualified individual," sufficient to establish a prima facie case. Defendant's motion for summary judgment is therefore **granted** on Plaintiff's claims for disability discrimination.  (Dkt. 2, pars. 48-63).

**3.  Retaliation**

To establish a prima facie of retaliation under the FCRA, a plaintiff must establish that: (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the adverse action and the protected expression.  Lucas, 257 F.3d at 1260.  Defendant maintains that Plaintiff cannot demonstrate the requisite causal connection because the adverse action---the request for a resignation---was due to Plaintiff's failure to report to work on April 19, 2010.  Likewise, Defendant maintains that Plaintiff cannot show that this non-discriminatory reason is pretextual.

Case No. 8:13-CV-599-T-17TBM

Defendant has advanced arguments that are essentially identical to those raised in connection with Plaintiff's FMLA-retaliation claim.  In the response in opposition to Defendant's motion, Plaintiff does not directly address the FCRA-retaliation claim (see generally Dkt. 19; Dkt. 25).  For the reasons set forth above, in connection with the FMLA-retaliation claim, the Court finds that Plaintiff has not shown that Defendant's asserted non-discriminatory reason is pretextual.  Summary judgment is therefore **granted** as to Plaintiff's FCRA-retaliation claim (Dkt. 2, pars. 64-67).

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 15) is granted in part and denied in part:

1.  As to disability discrimination and retaliation under the FCRA, **granted**;
2.  As to retaliation under the FMLA, **granted**;
3.  As to interference under the FMLA, **denied**.

**DONE AND ORDERED** in Chambers, in Tampa, Florida on this 2nd day of July, 2014.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties
and counsel of record

16